<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| MICHAEL KULPINSKY, | : | |
| | : | |
| Plaintiff, | : | Civil No. 21-0770 |
| | : | (RBK/KMW) |
| v. | : | |
| | : | **OPINION** |
| INNOVAIRRE HOLDING COMPANY, LLC, et al. | : | |
| | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

Presently before the Court is Defendant Dean Wimer and Defendant Innovairre Holding Company's Motions to Dismiss (Doc. No. 17, 18) the Amended Complaint pursuant to Rule 12(b)(6) and (b)(1). For the reasons set forth below, Defendants' Motions are **DENIED** in part.

**I.     BACKGROUND**

**A.  Factual Background**

Plaintiff Michael Kulpinsky ("Mr. Kulpinsky"), a resident of South Carolina, was initially hired as Director of Operations for Defendant Innovaire Holding Company, LLC ("Innovaire") in 2010. (Doc. No. 16, Am. Compl. at ¶ 9). In early of 2019, Mr. Kulpinsky was promoted to President and Chief Operating Officer and worked out of Innovaire's Cherry Hill, New Jersey office. (*Id.* at ¶¶ 4, 9). Later that same year, Dean Wimer was hired as the new Chief Executive Officer of Innovaire and shortly thereafter, Mr. Kulpinsky informed the company that he intended to resign. (*Id.* at ¶ 11). Innovaire requested Mr. Kulpinsky's continued employment and offered him a new employment agreement with various incentives, including an annual

1

salary of $400,000 and severance at this amount if terminated without cause. (*Id.* at ¶¶ 12, 14, 19). This new agreement was executed on November 19, 2019. (*Id.* at ¶ 13).

On July 1, 2020, Mr. Wimer advised Mr. Kulpinsky via videoconference that his employment would be terminated without cause effective immediately, but that he would receive his salary and benefits in accordance with the employment contract. (Doc. No. 21, Aff. of Kulpinsky at ¶ 31). At the time of this call, Mr. Wimer was in Tennessee and Mr. Kulpinsky, South Carolina. (Doc. No. 17, Aff. of Wimer at ¶ 12). Thereafter, Mr. Kulpinsky received a letter from Innovairre dated July 1, 2020, providing him with his 12 months' notice that his employment was terminated without cause, but that Innovairre agreed to pay his salary and benefits during the 12-month notice period, and 100% of his base salary for two years following the Release Effective Date. (Doc. No. 16, Am. Compl. at ¶¶ 23, 24).

Over six months later, on December 7, Innovaire informed Mr. Kulpinsky that his employment was being terminated for Cause, effective immediately because:

> during the Term, [he] substantially and intentionally failed to meet material provisions of the Employment Agreement, specifically Article 2.13, [by] engag[ing] in conduct that has been materially injurious to Innovaire and its affiliates, and have habitually or willfully neglected or disregarded directives of Innovaire.

(*Id.* at ¶ 26). A day later, Innovaire ceased paying Mr. Kulpinsky's wages. (*Id.* at ¶ 28).

Shortly after Mr. Kulpinsky's termination status was changed from "without cause" to "for cause," his attorney, Mr. Bonnist, reached out to counsel for Innovairre, Ms. Carrasco, requesting further detail regarding the change in termination status and informing her that Innovairre's actions were in violation of New Jersey law. (Doc. No. 23-2, Exhibit 2). Counsel conferred on December 17 and discussed a potential resolution of Mr. Kulpinsky's claims. (Doc. No. 23-2, Decl. at ¶ 9). A little less than a month later, in an email with the subject line, "Re: For Settlement Purposes Only - Kulpinsky v. Innovairre and Wimer," Mr. Bonnist informed Ms.

Carrasco that if they did not reach a resolution by the end of the week, Mr. Kulpinsky would file suit. (Doc. No. 23-2, Exhibit 3).

In response, Ms. Carrasco inquired whether Mr. Kulpinsky had a counteroffer to her client's proposed settlement. (*Id.*). Mr. Bonnist indicated that "if that is the best offer then please confirm and we will file tomorrow." (*Id.*). Ms. Carrasco told Mr. Bonnist that she would check in with her client and inform him of the response. (*Id.*). When Mr. Bonnist did not hear back from Ms. Carrasco, he emailed her again stating "Melissa – I would like to get this filed if there is no further interest." (*Id.*). Later that day, and only two days after Mr. Bonnist's email indicating that Mr. Kulpinksy would file suit by the end of the week, Ms. Carrasco responded:

> Thank you for your efforts to resolve this matter without litigation. My client certainly was willing; however, Mr. Kulpinsky's unwillingness to respond to its offer indicates that the dispute between our clients will require the court's intervention. Accordingly,   attached, please find a copy of the Complaint and Exhibits that were filed earlier today.

(*Id.* at Exhibit 4). Innovairre had filed suit against Mr. Kulpinsky in the Eastern District of Tennessee seeking, in part, a declaratory judgment that Mr. Kulpinsky's conduct constituted "Cause" for termination.

### B. Procedural History

On January 14, 2021, Plaintiff filed a complaint against Defendants Innovairre and Wimer asserting claims for breach of contract and violation of New Jersey's Wage Payment Law. (Doc. No. 1). Defendants moved to dismiss. (Doc. No. 13, 14). After this Court issued an order to show cause why the complaint should not be dismissed for lack of subject matter jurisdiction, Plaintiff filed an amended complaint curing the jurisdictional deficiencies (Doc. No. 15, 16). Defendants then refiled their motions to dismiss. (Doc. No. 17, 18).

## II.     LEGAL STANDARD

### A.  Rule 12(b)(6)

The first-to-file rule is not jurisdictional. *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig.* (No. II), 974 F.3d 228, 233 (3d Cir. 2020). Therefore, the proper standard to employ when analyzing this issue is Rule 12(b)(6). *Id.* Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Finally, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). A complaint cannot survive

a motion to dismiss where a court can only infer that a claim is merely possible rather than plausible. *Id.*

### B. Rule 12(b)(2)

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). However, when a district court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and is entitled to have its allegations taken as true and all factual disputes drawn in its favor. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

Despite having all reasonable inferences drawn in its favor, the plaintiff cannot rely on the bare pleadings alone to defeat a defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603 (3d Cir. 1990). The plaintiff must respond by establishing jurisdiction facts through sworn affidavits and competent evidence, not through mere allegations. *Id.* at 604. Thus, the Court may rely on documents outside the pleadings because a Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings, i.e., whether in personam jurisdiction actually lies." *Id.* at 603.

### III.   DISCUSSION

We will first address Defendants' motions to dismiss under the first to file rule and motions to transfer or stay as they are potentially dispositive of this matter. Defendant Wimer's motion to dismiss for lack of personal jurisdiction is addressed last.

### A. First to File Rule

Defendants contend this case should be dismissed under the first to file rule because the Tennessee lawsuit was filed first, and it involves the same parties and subject matter. Plaintiff does not dispute that there is substantial overlap between the two cases, rather, he contends the first to file rule should not apply because Defendants engaged in anticipatory filing—a well-recognized exception to this rule. Defendants reject characterization of their filing as "anticipatory." They contend this exception does not apply because Plaintiff has not shown that New Jersey is a less favorable forum for Defendants, they were not engaging in settlement negotiations, and the Tennessee action was not a preemptive declaratory judgment action. This is not a close call. Defendants' filing of the Tennessee action smacks more of gamesmanship than it does a good faith effort to resolve a dispute.

The Third Circuit has adopted the "first-filed" rule, which requires that "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir.1988) (alteration in original) (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir.1941)). The first-filed rule seeks to promote comity among federal courts and empowers a district court "to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *EEOC*, 850 F.2d at 971.

However, the first-filed rule is not to be applied woodenly.[1] *See id.* at 972; *Oak Assocs., Ltd. v. Palmer*, No. 05–4210, 2006 WL 293385, at *3 (E.D.Pa. Feb. 7, 2006). A court has discretion to consider the specific circumstances of the case when determining whether to

---

[1] This principle forecloses Defendants' contention that Plaintiff has not shown New Jersey is a less favorable forum and we need not say anymore. *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 977 (3d Cir. 1988) (dictating that "a court must act with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.").

6

dismiss an action pursuant to the first-filed rule because "[t]he letter and spirit of the first-filed rule . . . [is] grounded [in] equitable principles." *EEOC*, 850 F.2d at 977. Therefore, the courts have recognized several exceptions which justify departure from this rule. *Zelenkofske Axelrod Consulting, L.L.C. v. Stevenson*, No. 99–3508, 1999 WL 592399, at *2 (E.D.Pa. Aug. 5, 1999). As relevant here is the anticipatory filing exception.

"Anticipatory suits are found when the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent, and are viewed with disfavor as examples of forum shopping and gamesmanship." *Samsung Elecs. Am., Inc. v. Grecia*, No. CV 21-562, 2021 WL 978957, at *12 (E.D. Pa. Mar. 15, 2021). The inquiries critical in determining whether the filing of a lawsuit was anticipatory or prompted by bad faith "are quite similar, as paramount in both considerations is the question of whether the first-filed action was filed in apparent anticipation of imminent judicial proceedings by the opposing party." *Fed. Trade Comm'n v. Neora, LLC*, No. CV 19-19699 (FLW), 2020 WL 4282753, at *5 (D.N.J. July 27, 2020).

This is an easy case for application of the anticipatory filing exception and there are two reasons why. First, it is quite clear that Defendants filed the Tennessee action after receiving specific, concrete indications from Plaintiff that a lawsuit was imminent. After receiving three emails from Plaintiff within the span of two days specifically stating that if their dispute could not be resolved by the end of the week or if Defendant did not have a better settlement offer, Defendants filed suit in Tennessee against Plaintiff seeking, in part, resolution of the same questions asserted in Plaintiff's draft complaint. The timing, specificity, subject matter of these emails, and the nature of Defendants' lawsuit are more than sufficient to establish that their filing was anticipatory. *Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F. Supp. 2d 613, 624

7

(W.D. Pa. 2009) (concluding the defendant's filing was improper because it filed a declaratory action seeking resolution of the same questions as those in the plaintiff's complaint three days after receiving letters from the plaintiff indicating that a lawsuit was imminent); *Church & Dwight v. Mayer Labs., Inc.*, No. 08-5743, 2010 WL 3907038, at *8 (D.N.J. Sept. 28, 2010) (declining to apply "first-to-file" rule where plaintiff in first-filed action "filed its declaratory judgment suit shortly after receiving [defendants] draft complaint"); *Automotive Service Ass'n of New Jersey, Inc. v. Rockland Exposition, Inc.*, Civ. Action No. 08–3186, 2008 WL 5244282, *5 (D.N.J. Dec.12, 2008) (finding anticipatory filing where plaintiff filed its complaint "one day after informing defendants that it needed more time to respond to defendants' planned litigation.").

The second reason why we decline to apply the first-to-file rule is because Defendants have proffered absolutely no justification for why they filed suit in Tennessee. One would think that if a party is being charged with a bad-faith filing, and there is an innocent explanation for the impeccable timing—such as, that they had planned all along to file suit against Mr. Kulpinsky in Tennessee—such an explanation would be provided. The absence of any such justification from the Defendants' briefs is glaring and convinces this Court that the Tennessee filing was preemptive. Accordingly, Defendants motion to dismiss or stay pursuant to the first to file rule is denied.

Defendants' arguments to the contrary deserve little weight. If the parties' discussions regarding the potential resolution of Mr. Kulpinsky's claims in an email labeled, "Re: For Settlement Purposes Only - Kulpinsky v. Innovairre and Wimer," do not constitute settlement negotiations, we are not sure what would. Moreover, the Defendants' mischaracterization of the settlement negotiations as "complete" or "over" at the time they filed suit is unavailing. The last

8

communication from defense counsel prior to filing suit was her representation that she would check with her client and inform Plaintiff's counsel the next day if her client had a better offer. By making this representation, she knew or should have known Plaintiff's counsel would tarry until they received a response and she took advantage of the delay to file suit. Thus, at the time Defendants filed suit, settlement negotiations had not ended. We also fail to see how the Tennessee action is not a preemptive declaratory action. Defendants concede they are seeking a declaratory judgment in Tennessee and simply because they asserted other claims does not change this outcome.

### B. Motion to Transfer[2]

Alternative to dismissing the case in its entirety, the Defendants move this Court to transfer the case to the Eastern District of Tennessee or stay it pending resolution of the Tennessee case. Defendants contend in a cursory fashion that "[a] detailed analysis" of the public and private factors regarding transfer is not necessary in light of the clear application of the first-to-file rule and the pendency of substantially similar litigation in Tennessee. Instead, they contend transferring this case to the Eastern District of Tennessee, where the prior related suit is pending, serves the private interest of the parties, including Defendant Wimer who is a Tennessee resident, as well as the public interest in the efficient use of judicial resources. We disagree.

On a motion to transfer or stay under the first-filed rule, a court must consider the same factors as those used in a motion to transfer pursuant to 28 U.S.C. § 1404(a); *Ivy–Dry, Inc. v. Zanfel Labs., Inc.*, No. 08–4942, 2009 WL 1851028 at *8–9 (D.N.J. June 24, 2009) (citing *Nature's Benefit, Inc. v. NFI*, No. 06-4836, 2007 WL 2462625 at *8–9 (D.N.J. Aug. 27, 2007).

---

[2] Because we find that transfer is not for the convenience of the parties or in the interests of justice, we need not address Plaintiff's argument regarding personal jurisdiction.

9

Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). While there are factors to be considered, the decision whether to transfer an action pursuant to Section 1404(a) is within the Court's discretion. *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 872 (3d Cir. 2013). The party seeking transfer of venue bears the burden of establishing that transfer is warranted and must submit "sufficient information in the record" to facilitate the Court's analysis. *Hoffer v. InfoSpace.com, Inc.*, 102 F. Supp. 2d 556, 572 (D.N.J. 2000).

Under Section 1404(a), the Court must consider a wide range of public and private interests when determining if a transfer to a new venue is appropriate. The Third Circuit has identified the following private factors as being significant to the § 1404(a) analysis:

> (1) [P]laintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted). Among the public factors that courts consider are the following:

> (1) [T]he enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (citations omitted).

The private and public factors both militate against transfer. With respect to the private factors, the claim arose out of a New Jersey-based employment with a New Jersey company, and

given this it is likely that all the witnesses—aside from Defendant Wimer—and evidentiary records are located in New Jersey. Likewise, considering that Defendant Wimer travelled to New Jersey on occasion for work, it is difficult to see it being prohibitively burdensome for him to travel here to serve as a witness in this case. Moreover, Innovairre, a New Jersey based company with no ties to Tennessee, and Kulpinsky, an individual with no ties to Tennessee, would be heavily burdened by having to litigate in that state's courts. *Fernandes v. Deutsche Bank Nat'l Tr. Co.*, 157 F. Supp. 3d 383, 391 (D.N.J. 2015) (finding it did not work a serious inconvenience for the defendants to defend their forum based activities in the district of New Jersey considering they conducted business in New Jersey). Plaintiff and Defendant both obviously have opposite preferences, but Kulpinsky's preference relates to the applicable law, witnesses, and evidence, and Wimer's preference merely reflects his attempt to burden Kulpinsky by shopping this case to Tennessee. Therefore, the private factors weigh in favor of retention of this lawsuit.

      The public factors also counsel against transfer, although not as strongly. First, as Plaintiff points out, the underlying dispute involves an employment agreement governed by New Jersey law and the claims asserted here arise under New Jersey law. Certainly this Court, as opposed to a Court sitting in the District of Tennessee, possesses greater familiarity with the applicable New Jersey law and thus should be the one to resolve the dispute. *Fernandes v. Deutsche Bank Nat'l Tr. Co.*, 157 F. Supp. 3d 383, 391 (D.N.J. 2015) (concluding the public interest factors did not weigh in favor of transfer because New Jersey law governed the plaintiff's claims, and a New Jersey federal court possesses greater familiarity with the applicable law than a Georgia federal court). Second, New Jersey has a greater interest in resolving this dispute than Tennessee given that Mr. Kulpinsky is a New Jersey employee and his agreement is governed by New Jersey law. *Ethicon, Inc. v. Randall*, No. 320CV13524BRMZNQ, 2021 WL 2206106, at

11

*16 (D.N.J. May 28, 2021) (explaining that the state where the culpable conduct occurred has a strong interest in adjudicating the dispute); *see also Allianz*, 2008 U.S. Dist. LEXIS 90720, at *17, 2008 WL 4852683 (reasoning "the [p]olicy appears to have been issued pursuant to New Jersey law, [which is] a fact that bears on the local interest in deciding the matter."). The other public interest factors are, at best, neutral. Accordingly, this Court finds that transfer is not warranted.

### C. Specific Personal Jurisdiction

Defendant Dean Wimer contends this Court lacks specific personal jurisdiction over him because there are no allegations that he purposefully directed his activities at a resident of New Jersey as Mr. Kulpinsky is a citizen of South Carolina. Moreover, according to Defendant Wimer, the most contact he had with New Jersey was simply attending a few staff meetings in 2019 and 2020—none of which were for the sole purpose of meeting Mr. Kulpinsky. Lastly, Defendant contends that the termination letter was sent from Knoxville, Tennessee and the video conference between Mr. Kulpinsky and Defendant occurred when they were in their respective home states—Tennessee and South Carolina.

Plaintiff maintains it has presented a prima facie case for specific personal jurisdiction over Defendant Wimer because he worked for a New Jersey-based company, traveled to and from New Jersey for work where he and Mr. Kulpinsky interacted, carried out business decisions that affected Innovaire in New Jersey, communicated the decision to unilaterally reduce Mr. Kulpinsky's base salary, made the decision to terminate Kulpinsky's employment for Cause, and authored the July 1, 2020 notice. Plaintiff also contends that his claims arise out of or relate to Defendant Wimer's contacts with New Jersey because Defendant Wimer terminated Plaintiff's New Jersey based employment.

"[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). In New Jersey, "courts may exercise jurisdiction over a nonresident defendant to the uttermost limits permitted by the United States Constitution." *Nicastro v. McIntyre Mach. Am., Ltd.*, 987 A.2d 575, 589 (2010). "Accordingly, in determining whether personal jurisdiction exists, we ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868; *Grimes v. Vitalink Commc'ns Corp.,* 17 F.3d 1553, 1559 (3d Cir.1994). And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174 (quoting *Int'l Shoe,* 326 U.S. at 320, 66 S.Ct. 154).

Even if we were to agree with Plaintiff that Defendant Wimer cannot hide behind a corporate shield to hinder personal jurisdiction, Plaintiff's New Jersey Wage Payment Law claim does not arise out of Defendant Wimer's contacts with New Jersey. The theory of Plaintiff's claim under the NJWPL is that his "for Cause" termination was unjustified, fabricated, and retaliatory, and therefore Defendants did not have a legal right to withhold his payments thereby

violating the NJWPL. (Doc. No. 16, Am. Compl. at ¶¶ 28–29, 43). At bottom then, Plaintiff's NJWPL claim is effectively premised on a breach of his employment contract because he claims the circumstances for which he was terminated "for Cause" do not constitute "Cause" under the agreement.

For contract claims, a plaintiff must satisfy a "restrictive standard" by showing proximate causation (also called "substantive relevance"). *O'Connor*, 496 F.3d at 318, 320. But-for causation is not enough: "[T]he defendant's contacts with the forum [must have been] *instrumental* in either the formation of the contract or its breach." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (emphasis added). "So a plaintiff cannot allege simply that but for *x*'s occurrence, *y* (which may have been remote and not foreseeable) would not have happened." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 130 (3d Cir. 2020).

For the most part Plaintiff does this Court's work for it because, besides for a lone statement in the introductory paragraph, there is essentially no analysis relating to this requirement.[3] Even still, if we were to consider Defendant Wimer's contacts with New Jersey— that he operated a New Jersey based company, traveled to and from New Jersey for work, and carried out business decisions affecting Innovairre in New Jersey—it is difficult to understand how they were *instrumental* in his decision to wrongfully terminate Mr. Kulpinsky for Cause. That is to say, we see no substantive relevance in these contacts. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 319 (3d Cir. 2007) (explaining substantive relevance "examines whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim."). To be sure, Defendant Wimer's contacts with New Jersey are certainly connected to Mr.

---

[3] Nor does Plaintiff address the "fair play and substantial justice" factors.

Kulpinsky's claim because they generally involved management of Innovairre's New Jersey based employees, but that is not enough. *See Danziger & De Llano, LLP,* 948 F.3d at 130 (noting "a plaintiff cannot allege simply that but for *x*'s occurrence, *y* (which may have been remote and not foreseeable) would not have happened.").

What may have substantive relevance is the communications regarding Plaintiff's termination without and then with cause. However, these communications occurred while Defendant Wimer was in Tennessee and Plaintiff was in South Carolina. Therefore, without more, we cannot say that Plaintiff's NJWPL claim arose out of Defendant Wimer's contacts with New Jersey. *Id.* (concluding, in part, that none of the plaintiff's contract or intentional tort claims arose out of or related to the defendant's activities in Pennsylvania because the parties exchanged emails and spoke on the phone while working in Ohio and Texas); *see also Jackson v. Saber Healthcare Grp. LLC*, No. 13-CV-3690, 2013 WL 6210482, at *3 (E.D. Pa. Nov. 26, 2013) (concluding it had personal jurisdiction over the defendant because the defendant reached out to the Commonwealth of Pennsylvania by terminating the plaintiff over the phone when she was present in state); *Selmani v. Kline*, No. 2:16-CV-00264 (WJM), 2016 WL 5339574, at *3 (D.N.J. Sept. 22, 2016) (finding it had personal jurisdiction over a high level employee because he "personally visited New Jersey to inform Plaintiff that he was going to be terminated."). Accordingly, we do not have personal jurisdiction over Defendant Wimer.

## IV.     CONCLUSION

For the reasons set forth above, Defendants motions to dismiss under the first to file rule and/or transfer or stay are denied. Defendant Wimer's motion to dismiss for lack of personal jurisdiction is granted. An appropriate order follows.

Dated: 8/24/2021                                                          /s/ Robert B. Kugler
                                                                                    ROBERT B. KUGLER
                                                                                    United States District Judge

15